[Cite as *State v. Payne*, 2020-Ohio-1009.]

PIN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | No. 19AP-248 |
| | | (C.P.C. No. 01CR-3300) |
| Plaintiff-Appellee, | : | and |
| | | No. 19AP-250 |
| v. | : | (C.P.C. No. 01CR-3339) |
| Scott E. Payne, | : | (ACCELERATED CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on March 17, 2020

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Seth L. Gilbert*, for appellee.

**On brief:** *Scott E. Payne*, pro se.

APPEALS from the Franklin County Court of Common Pleas

BRUNNER, J., authoring lead opinion.

{¶ 1} Defendant-appellant, Scott E. Payne, appeals a decision and judgment of the Franklin County Court of Common Pleas entered on March 28, 2019, denying Payne's motion to correct his sentence on the grounds that it was void as originally issued. Because the trial court erred in construing Payne's motion to correct a void sentence as a postconviction petition and because a number of errors exist in the judgment entry with respect to Franklin C.P. No. 01CR-3300, the trial court's judgment is reversed and remanded with instructions to issue a corrected judgment entry.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} In 2001, under two separate case numbers, Payne was indicted for 6 counts of aggravated robbery, 12 counts of robbery, 4 counts of kidnapping, and 1 count of assault. (June 5, 2001 Indictment 01CR-3300; June 8, 2001 Indictment 01CR-3339.) All counts except the assault were accompanied by firearm specifications. (June 5, 2001 Indictment 01CR-3300; June 8, 2001 Indictment 01CR-3339.) After a lengthy trial, the jury found

Payne guilty of all counts and specifications except the assault charge. (Apr. 12, 2002 Verdict Forms.) We have previously recounted the factual underpinning of the charges in detail in Payne's direct appeal. *State v. Payne*, 10th Dist. No. 02AP-723, 2003-Ohio-4891, ¶ 3-11. In short, the charges stemmed from the armed robberies of 2 flower shops and a credit union and there was sufficient and persuasive evidence of Payne's guilt. *Id.* at ¶ 1, 3-11, 74-76.

{¶ 3} On May 28, 2002, the trial court convened a sentencing hearing. (May 28, 2002 Sentencing Tr., filed Sept. 23, 2002.)[1] At the hearing, the prosecution conceded and the trial court agreed that the alternatively charged aggravated robberies should merge with the robbery counts, leaving six aggravated robbery charges (one for each person victimized in the course of the three robberies). *Id.* at 5, 10-12. The trial court then reasoned, over the objection of the State, that the kidnappings essentially only occurred as part of the aggravated robberies and therefore merged those charges also into the aggravated robberies. *Id.* at 5-11.

{¶ 4} The court sentenced Payne on Franklin C.P. No. 01CR-3339 first. *Id.* at 12-13. This case involved the robbery of a credit union and also of a bystander. *Id.* In that case, the court sentenced Payne to serve consecutive terms of 10 years for each of the 2 aggravated robberies (Counts 1 and 4) plus 3 prior and consecutive years for each of the 2 associated firearm specifications. *Id.* Thus, on that case, the trial court imposed a total of 26 years and also determined that the sentence would run consecutively to the sentence it was about to impose in case No. 01CR-3300. *Id.* at 13. Approximately one week later, it journalized an entry memorializing the sentence it orally indicated it would impose. (June 3, 2002 Jgmt. Entry 01CR-3339.)

{¶ 5} In case No. 01CR-3300, which was the case concerning the 2 flower shop robberies (and the persons in the shops), the trial court sentenced Payne to serve 10 years on each of the 4 aggravated robberies (Counts 1, 4, 8, and 12). (Sentencing Tr. at 14-15.) It ordered Payne to serve 3 of the 10-year sentences concurrently with each other (Counts 1, 4, and 8), but consecutively to the remaining 10-year aggravated robbery sentence (Count 12). *Id.* at 15. It remarked that, as a consequence of its decision to run 3 of the aggravated

---

[1] Where identical documents are filed in both underlying criminal cases, we omit the case number from the citation.

robbery sentences concurrently, the 3 associated firearm specifications merged into one, leaving just 2 of the original 4 firearm specifications.  *Id.*  Ultimately, the court imposed 2 consecutive 10-year sentences and 2 consecutive 3-year firearm specifications for a total of 26 years.  *Id.* at 14-15.  It issued an entry approximately one week later in which it generally attempted to impose the same sentence it orally imposed.

{¶ 6}   However, that judgment entry differed from its oral pronouncement. Although the trial court noted that the specifications to the 3 concurrently sentenced aggravated robbery counts "merge[d]," it stated that it was imposing 3-year sentences for each of the 3 specifications concurrently.  (June 3, 2002 Jgmt. Entry 01CR-3300 at 2.)  It is also noteworthy for the purposes of this appeal that, although the entry referenced the firearm specification to Count 12 and indicated that the concurrent sentences imposed on Counts 1, 4, and 8 would run consecutively to Count 12, it never actually imposed a sentence for Count 12.  *Id.*  But, in a corrected judgment entry issued one week later, the trial court rectified the clerical error with respect to Count 12.  (June 11, 2002 Corr. Jgmt. Entry 01CR-3300 at 2.)  Finally, although the court properly noted that Count 11 merged into Count 8 in both the original and corrected entries, in the recitation of the Counts of which jury found Payne to be guilty, both entries did not reference Count 11.  (June 3, 2002 Jgmt. Entry 01CR-3300 at 1; June 11, 2002 Corr. Jgmt. Entry 01CR-3300 at 1.)

{¶ 7}   After making findings on the issue of jail-time credit, the trial court discussed the reasons it had imposed consecutive terms of imprisonment.  (Sentencing Tr. at 18-19.) Then it discussed post-release control:

> [Court]: This time that I have given you, you're going to do this time day for day. If you live long enough and they finally run out of time here and they release you from the prison, the Adult Parole Authority will supervise your behavior out on the street for five years after your release. During that period of time, if you violate any condition of your release, they could return you to the prison for up to nine months for each violation.
>
> If there are multiple violations, these nine-month periods could total up to 50 percent of whatever this sentence is, and to be honest with you I haven't even totalled it up. But whatever these numbers are, if they're 50, if you mess up repeatedly when you get out, they could send you back for another 25 years nine months at a time. Do you understand all of that?
>
> [Payne]: Yes.

*Id.* at 19-20.  All of the sentencing entries stated that the court had notified the defendant regarding "the possibility of the applicable periods of post-release control."  (June 3, 2002 Jgmt. Entry 01CR-3300 at 3; June 3, 2002 Jgmt. Entry 01CR-3339 at 2; June 11, 2002 Corr. Jgmt. Entry 01CR-3300 at 3.)

{¶ 8}  Payne appealed and this Court affirmed.  *Payne*, 2003-Ohio-4891.

{¶ 9}  Over the years that followed, Payne filed (among other petitions and motions) a number of motions to correct his sentence, arguing that more of the counts should have merged and that the trial court misapplied the sentencing statutes.  (Aug. 10, 2006 Mot. to Corr. Sentence; Oct. 20, 2011 Mot. for Resentencing 01CR-3339; June 19, 2012 Mot. to Corr. Sentence; Dec. 6, 2012 Mot. to Corr. Sentence.)  When the first of these was denied, an appeal occurred.  *State v. Payne*, 10th Dist. No. 07AP-104, 2007-Ohio-4594. We affirmed the trial court's denial in 2007 based on the notion that a postconviction petition was the "exclusive remedy by which a person may bring a collateral challenge to the validity of a conviction or sentence in a criminal case" and that Payne's motion, if construed as a petition, was untimely.  *Id.* at ¶ 5, 7-9.

{¶ 10}  After that appeal, the trial court denied one more of Payne's motions, noting that his repetitive requests were barred by res judicata.  (Dec. 3, 2012 Decision & Entry 01CR-3339.)  Payne's motions appear generally to have gone unaddressed by the trial court after that point until the denial of the motion which forms the basis of this appeal.

{¶ 11}  Payne filed the latest motion to correct his sentence on July 9, 2018.  (July 9, 2018 Mot. to Corr. Sentence.)  When several months passed without action by the trial court, Payne filed a notice on November 28, 2018 informing the trial court that, after our previous decision in 2007, the law had changed as a result of the Supreme Court of Ohio's decision in *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238.  According to *Fischer*, motions to correct void sentences were now considered a proper filing, were not to be considered postconviction petitions, and were not to be denied on grounds of res judicata. (Nov. 28, 2018 Notice, citing *Fischer* at ¶ 25.)  Yet, on March 28, 2019, the trial court denied Payne's motion, characterizing it as an untimely successive postconviction petition and finding that it was unsuccessful in invoking the jurisdiction of the court.  (Mar. 28, 2019 Decision & Entry at 2-3.)

{¶ 12}  Payne now appeals.

## II. ASSIGNMENTS OF ERROR

{¶ 13} Payne presents six assignments of error for review:

[1.] The trial court abused its discretion when it denied Defendant-appellant's Motion to Correct a facially illegal sentence as a post-conviction motion.

[2.] A Judgment entry is not a final appealable order when its judgment entry is in violation State v. Lester, 130 Ohio St.3d 303, 2011-Ohio-5204, 958 N.E.2d 142, where the sentencing entry fails to set forth the fact of conviction, and fails to set forth the sentence to count twelve.

[3.] The trial court's sentence on Defendant-Appellant's firearm specification is contrary to law and thus, void where it failed to sentence the Defendant-Appellant on the one-year firearm specifications in case No. CR 06 3300.

[4.] The trial court's sentence on Defendant-Appellant's firearm specification is contrary to law and thus, void when it failed to impose the firearm specification consecutively to and prior to any prison term imposed in case No. CR 06 3300 and CR 06 3339.

[5.] The trial court's sentence in CR 06 3300 is contrary to law when it imposed sentence on the firearm specification as an actual incarceration, and imposes individual sentences on firearms specifications, then merges the sentences, and then runs the sentence as concurrent sentences.

[6.] The trial court's judgment entry in CR 06 3330 and CR 06 3339 is contrary to law when it failed to properly impose post release control.

(Sic passim.)

## III.  DISCUSSION

### A. First Assignment of Error – Whether Payne's Motion to Correct a Void Sentence Should have been Construed as a Post-Conviction Petition and Denied as Untimely

{¶ 14} In general, the postconviction relief process is a collateral civil attack on a criminal judgment. *State v. Steffen*, 70 Ohio St.3d 399, 410 (1994). "It is a means to reach constitutional issues which would otherwise be impossible to reach because the evidence supporting those issues is not contained" in the trial court record. *State v. Murphy*, 10th Dist. No. 00AP-233, 2000 WL 1877526, 2000 Ohio App. LEXIS 6129, *5 (Dec. 26, 2000);

*see also, e.g.*, *State v. Carter*, 10th Dist. No. 13AP-4, 2013-Ohio-4058, ¶ 15.  If Payne had genuinely filed a postconviction petition rather than a motion to correct his sentence, he would have been required to show "that there was such a denial or infringement of [his] rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States."  R.C. 2953.21(A)(1)(a).  Since he had previously filed a bona fide postconviction petition, he would also have had to demonstrate that he "was unavoidably prevented from discovery of the facts upon which [he] must rely to present the claim for relief" and that "but for constitutional error at trial, no reasonable factfinder would have found [him] guilty of the offense of which [he] was convicted."  R.C. 2953.23(A)(1)(a) and (b).

{¶ 15}  Payne's arguments in his motion to correct his sentence are essentially that the trial court imposed a sentence that was not in accordance with its statutory authority. (July 9, 2018 Mot. to Corr. Sentence in passim.)  Payne's motion does not attempt to argue that his constitutional rights were violated, or that he was unavoidably prevented from discovering facts essential to his claim, or that, but for the constitutional rights violation, he would not have been convicted.  *See* R.C. 2953.21(A)(1)(a); R.C. 2953.23(A)(1)(a) and (b).  In short, Payne's motion is not argued or substantively designed as a traditional postconviction petition.  Rather it is a claim that the judgment against him is void in part because the trial court did not sentence in accordance with its statutory authority.  (July 9, 2018 Mot. to Corr. Sentence at 1.)

{¶ 16}  The Supreme Court has found that postconviction proceedings under Chapter 2953 of the Ohio Revised Code are not the exclusive means by which a criminal defendant may challenge his conviction after the judgment has become final:

> The state urges us to conclude, however, that because the General Assembly has provided a statutory remedy for addressing claimed constitutional error, the postconviction scheme is the exclusive avenue of redress. Thus, the state asserts, courts *must* construe postsentence Crim.R. 32.1 motions that are based on constitutional violations to be postconviction petitions. We disagree.

(Emphasis sic.) *State v. Bush*, 96 Ohio St.3d 235, 2002-Ohio-3993, ¶ 12.  The high court has also recognized that one motion an offender may file, even after a conviction becomes

final, is a motion arguing that his sentence is illegal because it was imposed beyond the bounds of the sentencing court's statutory authority:

> "A motion to correct an illegal sentence 'presupposes a valid conviction and may not, therefore, be used to challenge alleged errors in proceedings that occur prior to the imposition of sentence.' " *Edwards v. State* (1996), 112 Nev. 704, 708, 918 P.2d 321, quoting *Allen v. United States* (D.C.1985), 495 A.2d 1145, 1149. *It is, however, an appropriate vehicle for raising the claim that a sentence is facially illegal at any time. Id.* The scope of relief based on a rule, like Fed.R.Crim.P. 35, is likewise constrained to the narrow function of correcting only the illegal sentence. It does not permit reexamination of all perceived errors at trial or in other proceedings prior to sentencing. *See, e.g., Hill v. United States* (1962), 368 U.S. 424, 430, 82 S.Ct. 468, 7 L.Ed.2d 417.

(Emphasis added.) *Fischer* at ¶ 25; *see also State v. Moore*, 135 Ohio St.3d 151, 2012-Ohio-5479, ¶ 15.

{¶ 17} This Court and others have expressed concerns about the view that a defendant should be permitted to challenge a sentence at any time as void (rather than voidable) simply because a court erred in imposing the sentence and ignored or exceeded some statutory requirement:

> The Supreme Court previously recognized that "a void judgment is one that has been imposed by a court that lacks subject-matter jurisdiction over the case or the authority to act" while a "voidable judgment is one rendered by a court that has both jurisdiction and authority to act, but the court's judgment is invalid, irregular, or erroneous." *State v. Simpkins*, 117 Ohio St.3d 420, 2008-Ohio-1197, ¶ 12, 884 N.E.2d 568. The high court has also recognized that "we commonly hold that sentencing errors are not jurisdictional and do not necessarily render a judgment void." *Id.* at ¶ 13. Yet, in cases such as *Williams*, the Supreme Court has embraced exceptions that threaten to swallow the rule and lead to a situation where virtually any allegedly serious error in sentencing can be revived time and time again without being foreclosed by *res judicata*. This Court and others have expressed concerns about the legal basis and limits of the "voidness" doctrine that the Supreme Court has created in this context. *State v. Banks*, 10th Dist. No. 15AP-653, 2015-Ohio-5372, ¶ 16, fn. 1; *see also State v. Grimes*, 151 Ohio St.3d 19, 2017-Ohio-2927, ¶ 34-39, 85 N.E.3d 700 (DeWine, J., concurring in judgment only); *State*

*v. Fischer*, 128 Ohio St 3d 92, 2010-Ohio-6238, ¶ 41-57, 942
N.E.2d 332 (Lanzinger, J., dissenting).

*State v. Steele*, 10th Dist. No. 18AP-187, 2018-Ohio-3950, ¶ 11, fn. 1. This Court has sometimes characterized motions seeking resentencing or to vacate a conviction as postconviction petitions and considered them under the standards of review applied to such petitions. *State v. Draughon*, 10th Dist. No. 18AP-709, 2019-Ohio-1461, ¶ 10; *State v. Jennings*, 10th Dist. No. 17AP-248, 2018-Ohio-3871, ¶ 5; *State v. Bankston*, 10th Dist. No. 13AP-250, 2013-Ohio-4346, ¶ 7.

{¶ 18} However, unless and until the Supreme Court revisits *Fischer*, when a defendant such as Payne seeks only to claim that his sentence is void or partially void due to the trial court sentencing outside its statutory authority, there seems little choice but to evaluate it under *Fischer* and progeny. In light of that, this Court and the Supreme Court have considered many motions to correct void sentences without construing them as postconviction petitions. *See, e.g.*, *Moore* at ¶ 15 & in passim; *State v. Peoples*, 10th Dist. No. 18AP-850, 2019-Ohio-2141, ¶ 9-15; *State v. Bridges*, 10th Dist. No. 18AP-262, 2018-Ohio-4844, in passim; *State v. Melhado*, 10th Dist. No. 15AP-960, 2016-Ohio-3346, ¶ 8; *State v. Maser*, 10th Dist. No. 15AP-129, 2016-Ohio-211, in passim. Even the State's brief in this appeal concedes that "a motion to correct a void sentence is distinct from a postconviction petition." (State's Brief at 2, citing *Fischer*).

{¶ 19} In this case, Payne's motion was not filed as a postconviction petition. It was a motion requesting that the trial court "correct its facially illegal sentence." (July 9, 2018 Mot. to Corr. Sentence at 1.) Yet, the trial court, citing a decision that pre-dates *Fischer*, reasoned "regardless of how Defendant captions his motion, it is considered a petition for post-conviction relief because Defendant filed it after his direct appeal and he seeks to have this Court render the judgment against him void." (Mar. 28, 2019 Decision & Entry at 2.) It then found that Payne had not met the statutory requirements of R.C. 2953.23(A) for filing a postconviction petition. *Id.* at 2-3. Because Payne had not complied with the requirements of R.C. 2953.23, the trial court concluded that Payne had not successfully invoked its jurisdiction to consider the "untimely petition for post conviction relief." *Id.* at 2-3. This was error.

{¶ 20} Because *Fischer* and other cases of the Supreme Court make clear that motions to correct void sentences are cognizable, the trial court erred in treating Payne's

motion as a postconviction petition and dismissing it on timeliness grounds. Payne's first assignment of error is sustained.

## B. Second Assignment of Error – Whether the Judgment Entry was a Final Appealable Order

{¶ 21} Payne argues that the original judgment entry in his case was not a final appealable order because it omitted to state that the jury found him guilty of Count 11 and because it failed to impose a sentence on Count 12. (Payne's Brief at 6-9, citing *State v. Lester*, 130 Ohio St.3d 303, 2011-Ohio-5204.) Under *Lester* and Ohio Rule of Criminal Procedure 32(C), a "judgment of conviction is a final order subject to appeal under R.C. 2505.02 when it sets forth (1) the fact of the conviction, (2) the sentence, (3) the judge's signature, and (4) the time stamp indicating the entry upon the journal by the clerk." *Lester* at paragraph one of the syllabus. However, this Court has also recognized that courts do retain jurisdiction to correct clerical errors and clerical errors generally do not prevent judgments from becoming final. *Id.* at paragraph two of the syllabus; *State v. Raber*, 134 Ohio St.3d 350, 2012-Ohio-5636, ¶ 20.

{¶ 22} Although the trial court's original judgment entry referenced the firearm specification to Count 12 and indicated that the concurrent sentences imposed on Counts 1, 4, and 8 would run consecutively to Count 12, it never actually imposed a sentence for Count 12. (June 3, 2002 Jgmt. Entry 01CR-3300 at 2.) But the trial court corrected this clerical omission approximately one week later. (June 11, 2002 Corr. Jgmt. Entry 01CR-3300 at 2.) It is also true that, in listing the offenses of which jury found Payne to be guilty, the trial court omitted mentioning Count 11 in both the original and corrected entries. (June 3, 2002 Jgmt. Entry 01CR-3300 at 1; June 11, 2002 Corr. Jgmt. Entry 01CR-3300 at 1.) However, in both entries, the court explained that Count 11 merged with Count 8 and, thus, although Payne was found guilty of Count 11, he was not convicted and sentenced on Count 11. (June 3, 2002 Jgmt. Entry 01CR-3300 at 1; June 11, 2002 Corr. Jgmt. Entry 01CR-3300 at 1.)

{¶ 23} Payne's second assignment of error is overruled.

## C. Third Assignment of Error – Whether the Trial Court Ought to Have Sentenced Payne on the One-Year Firearm Specifications

{¶ 24} Payne notes that, in case No. 01CR-3300, he was charged with one-year firearm specifications in addition to the three-year firearm specifications and that, though

the trial court sentenced him on the three-year specifications, it did not dispose of the one-year firearm specifications.  (Payne's Brief at 9-10.)  However, in each of the verdict forms, the jury indicated a finding that Payne had "displayed and/or brandished and or use[d] the firearm to facilitate the offense."  *See, e.g.*, Apr. 12, 2002 Verdict Form 01CR-3300 Count 1.  Under R.C. 2929.14(D)(1)(a)(i) through (iii), R.C. 2941.141(B) and 2941.145(B) as constituted at the time of the offenses and sentencing, if a court imposed the three-year term consistent with the finding that an offender "display[ed] the firearm, brandish[ed] the firearm, indicat[ed] that the offender possessed the firearm, or us[ed] it to facilitate the offense," it could not also impose a one-year term.  *See* 2002 Am.Sub.H.B. No. 485[2]; 2001 Am.Sub.S.B. No. 179.[3]  Thus, the trial court could not have imposed the one-year specifications and there was, therefore, nothing for the trial court to have disposed of.

{¶ 25}  Payne's third assignment of error is overruled.

### D. Fourth Assignment of Error – Whether the Trial Court Erred in Imposing the Firearm Specifications

{¶ 26}  Payne points out that R.C. 2929.14(E)(1)(a) provided at the time of the offense and sentencing[4] that mandatory prison terms imposed under division (D)(1)(a) of the statute were to be served "consecutively to and prior to any prison term imposed for the underlying felony."  (Emphasis omitted.) (Payne's Brief at 11.)  Because the trial court did not mention in its entries that the specifications were to be served "prior to" Payne's substantive prison terms, he alleges the entries are defective and void.  *Id.* at 11-12.  However, though consecutive specification sentences are, as a matter of statute, to be served prior to the prison term for the underlying offense, there is no requirement that the trial court specifically state that statutory rule in its entries.  Such failure to do so does not render the entries erroneous or void.

{¶ 27}  Payne's fourth assignment of error is overruled.

### E. Fifth Assignment of Error – Whether the Trial Court Erred by Merging the Firearm Specifications, Imposing Multiple Sentences, or Referring to the Sentences as "Actual Incarceration"

{¶ 28}  Payne argues that the trial court erred in referring to the terms imposed for Payne's firearm specifications as "actual incarceration" because that was a term of art used

---

[2] Archived online at 2001 Ohio HB 485.
[3] Archived online at 1999 Ohio SB 179.
[4] This requirement is now found in division (C)(1)(a) of R.C. 2929.14.

in statutes predating Payne's sentencing.  (Payne's Brief at 13-15.)  Payne is correct both that the trial court referred to the imprisonment imposed in connection with the specifications as "actual" rather than "mandatory" and that the term "actual" had been replaced by the term "mandatory" by the time of his sentencing.  *See* 1995 Am.Sub.S.B. No. 2[5]; June 3, 2002 Jgmt. Entry 01CR-3300 at 2; June 11, 2002 Corr. Jgmt. Entry 01CR-3300 at 2; June 3, 2002 Jgmt. Entry 01CR-3339 at 2.  It is not clear that this error in terminology has had any practical effect on Payne.  Nevertheless, an incorrect term was used to describe the mandatory three-year sentences imposed for the firearm specifications.

{¶ 29}  Payne also argues that the trial court imposed multiple sentences for firearm specifications relating to a single act or transaction and despite having merged the specifications.  (Payne's Brief at 15-17.)  He is again correct.

{¶ 30}  At the time Payne was sentenced, a court was not permitted to "impose more than one prison term on an offender [for a firearm specification in relation to] felonies committed as part of the same act or transaction."  *See* R.C. 2929.14(D)(1)(b) (2007).  Senate Bill No. 184 added an exception to that rule in 2008 which is now found in division (B)(1)(g) of the definite sentencing statute:

> If an offender is convicted of or pleads guilty to two or more felonies, if one or more of those felonies are aggravated murder, murder, attempted aggravated murder, attempted murder, aggravated robbery, felonious assault, or rape, and if the offender is convicted of or pleads guilty to a specification of the type described under division (B)(1)(a) of this section in connection with two or more of the felonies, the sentencing court shall impose on the offender the prison term specified under division (B)(1)(a) of this section for each of the two most serious specifications of which the offender is convicted or to which the offender pleads guilty and, in its discretion, also may impose on the offender the prison term specified under that division for any or all of the remaining specifications.

R.C. 2929.14(B)(1)(g); *see also* 2008 Am.Sub.S.B. No. 184.[6]  This exception did not exist at the time of Payne's sentencing.  But still the trial court sentenced Payne to serve terms of imprisonment (albeit concurrent ones) as to the specifications on Counts 1, 4, and 8 (all of which concerned the robbery of a single flower shop and persons therein).  (June 5, 2001

---

[5] Archived online at 1995 Ohio SB 2.
[6] Archived online at 2007 Ohio SB 184.

Indictment 01CR-3300 at 1-8; June 3, 2002 Jgmt. Entry 01CR-3300 at 2; June 11, 2002 Corr. Jgmt. Entry 01CR-3300 at 2.)

{¶ 31}  In addition, the trial court merged these specifications both by oral recitation and in writing in the judgment entry.  (Sentencing Tr. at 15; June 3, 2002 Jgmt. Entry 01CR-3300 at 2; June 11, 2002 Corr. Jgmt. Entry 01CR-3300 at 2.)  Yet, despite having merged the specifications, it imposed concurrent sentences for each of the specifications accompanying Counts 1, 4, and 8.  (June 3, 2002 Jgmt. Entry 01CR-3300 at 2; June 11, 2002 Corr. Jgmt. Entry 01CR-3300 at 2.)  This was error and rendered the judgment entry void in relevant part such that modification or correction is now appropriate.  *State v. Williams*, 148 Ohio St.3d 403, 2016-Ohio-7658, ¶ 2, 31-34.

{¶ 32}  Payne's fifth assignment of error is sustained.

### F.  Sixth Assignment of Error – Whether the Trial Court Properly Imposed Post-Release Control in its Entry

{¶ 33}  "[A] trial court has a statutory duty to provide notice of postrelease control at the sentencing hearing" and "any sentence imposed without such notification is contrary to law." *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, ¶ 23.[7]  "[S]tatutorily compliant notification" includes "notifying the defendant of the details of the postrelease control and the consequences of violating postrelease control." *State v. Qualls*, 131 Ohio St.3d 499, 2012-Ohio-1111, ¶ 18.  The "preeminent purpose" of such notice is that "offenders subject to postrelease control know at sentencing that their liberty could continue to be restrained after serving their initial sentences." *Watkins v. Collins*, 111 Ohio St.3d 425, 2006-Ohio-5082, ¶ 52.  However, because a court is generally said to speak only through its journal, the trial court, in addition to oral notification at the sentencing hearing, is "required to incorporate that notice into its journal entry imposing sentence." *Jordan* at ¶ 6, 17, paragraph one of the syllabus.

{¶ 34}  Notification and incorporation in the judgment entry of the post-release control sanction are necessary to "empower[] the executive branch of government to exercise its discretion." *Jordan* at ¶ 22.  Thus, "to validly impose postrelease control, a minimally compliant entry must provide the APA [Adult Parole Authority] the information

---

[7] *See also State v. Singleton*, 124 Ohio St.3d 173, 2009-Ohio-6434, ¶ 35-36 (Pfeifer, J., concurring/dissenting), which notes that, rather than provide a de novo sentencing hearing, courts may apply corrective procedures as set forth in R.C. 2929.191.

it needs to execute the postrelease-control portion of the sentence." *State v. Grimes*, 151 Ohio St.3d 19, 2017-Ohio-2927, ¶ 13. The Supreme Court has clarified that a "sentencing entry must contain the following information: (1) whether postrelease control is discretionary or mandatory, (2) the duration of the postrelease-control period, and (3) a statement to the effect that the Adult Parole Authority ("APA") will administer the postrelease control pursuant to R.C. 2967.28 and that any violation by the offender of the conditions of postrelease control will subject the offender to the consequences set forth in that statute." *Id.* at ¶ 1.

{¶ 35} In this case, despite the fact that the trial court provided Payne with a detailed oral notification, the judgment entry only provided that it had notified the defendant regarding "the possibility of the applicable periods of post-release control." (June 3, 2002 Jgmt. Entry 01CR-3300 at 3; June 3, 2002 Jgmt. Entry 01CR-3339 at 2; Sentencing Tr. at 19-20.) This Court has held, in cases where oral notification is sufficient but written notification is not, that the judgment entry may be corrected nunc pro tunc. *State v. Harper*, 10th Dist. No. 17AP-762, 2018-Ohio-2529, ¶ 16-19.

{¶ 36} The State argues that the *Grimes* requirements should not be applied retroactively. (State's Brief at 11-12.) Under typical circumstances, the Supreme Court has recognized that "[a] new judicial ruling may be applied only to cases that are pending on the announcement date." *Ali v. State*, 104 Ohio St.3d 328, 2004-Ohio-6592, ¶ 6, citing *State v. Evans*, 32 Ohio St.2d 185, 186 (1972). In other words, a "new judicial ruling may not be applied retroactively to a conviction that has become final, i.e., where the accused has exhausted all of his appellate remedies." *Ali* at ¶ 6, citing *Transamerica Ins. Co. v. Nolan*, 72 Ohio St.3d 320, 323 (1995); *Doe v. Trumbull Cty. Children Serv. Bd.*, 28 Ohio St.3d 128 (1986), paragraph one of the syllabus; *Evans* at 186; *State v. Lynn*, 5 Ohio St.2d 106, 108 (1966); *State v. Gonzalez*, 138 Ohio App.3d 853, 859 (1st Dist.2000).

{¶ 37} However, the Supreme Court has also embraced the view that not properly imposing post-release control renders a sentence void in relevant part and therefore open to challenge at any time, irrespective of finality or other principles of res judicata. *Fischer*, 2010-Ohio-6238, at paragraphs one and two of the syllabus; *Harper* at ¶ 15. When post-release control is not appropriately imposed in a trial court's judgment entry, the sentence is partially void and never becomes final in that limited respect. *Harper* at ¶ 15. Thus, it is

appropriate to correct it now under *Grimes*. *Id.*; *see also Grimes* at ¶ 1. The dissent in *Harper* correctly observed that this argument may appear circular in the sense that the trial court's judgment is only void when it issued if its deficiencies under *Grimes* could be considered to have been deficiencies before the *Grimes* decision was published. *Harper* at ¶ 23 (Sadler, J., dissenting). But the view of *Grimes* this court adopted in *Harper* was that *Grimes* was not judicially legislating a new set of requirements but, rather, clarifying requirements that always existed. Thus, entries that failed to meet such requirements (even prior to *Grimes*) and were void in consequence of that failure should be subject to later correction.

{¶ 38} As this Court recognized when it decided *Harper*, this ruling is problematic in that it encourages filings to obtain retroactive compliance with the clarification enunciated by *Grimes*. Yet, the problem is not with *Grimes* or *Harper*. Rather, there are problems with the line of cases that have promoted sentencing errors from mere errors that render a judgment voidable, to breaches of statutory authority which render the judgment void ab initio.

{¶ 39} Payne's sixth assignment of error is sustained.

## IV. CONCLUSION

{¶ 40} The trial court erred in construing Payne's motion to correct a void sentence as a postconviction petition and dismissing it as untimely. As Payne argued in his motion, the original and corrected judgment entries with respect to case No. 01CR-3300 contain a number of errors. The original entry (corrected, however) omitted imposition of a sentence on Count 12, both entries impose concurrent sentences on the three merged firearm specifications, and neither entry explained (1) whether post-release control was discretionary or mandatory, (2) the duration of the post-release-control period, or included (3) a statement to the effect that the Adult Parole Authority would administer post-release control pursuant to R.C. 2967.28 and that any violation by Payne of the conditions of post-release control would subject the offender to the consequences set forth in that statute.

{¶ 41} Therefore, Payne's first, fifth, and sixth assignments of error are sustained and this case is remanded to the trial court with instructions to issue a corrected judgment entry that provides only a single three-year sentence for the three merged firearm specifications and notes that Payne will be subject to a five-year mandatory period of post-release control to be administered by the Adult Parole Authority pursuant to R.C. 2967.28

with the understanding that any violation by Payne of the conditions of post-release control will subject him to the consequences set forth in that statute. Payne's second, third, and fourth assignments of error are overruled.

*Judgment reversed and*
*cause remanded with instructions.*

NELSON, J., concurs in judgment only.
DORRIAN, J., concurs in judgment only in part and dissents in part.

DORRIAN, J., concurring in judgment only in part and dissenting in part.

{¶ 42} I respectfully dissent in part and concur in judgment only in part.

{¶ 43} I concur with the majority's conclusion that the original and corrected original judgment entries were final and appealable orders and would overrule the second assignment of error. This court has stated that "[i]f a direct appeal from the underlying sentencing entry has previously been taken in and decided by the court of appeals, the sentencing entry is implicitly a final order through application of the law of the case doctrine." *State v. Bates*, 10th Dist. No. 17AP-869, 2019-Ohio-1172, ¶ 19.[8] In *Bates*, we

---

[8] *Bates* further explains at paragraphs 19-20:

> [T]his court has found a consistent manner of dealing with sentencing entries that are allegedly deficient under Crim.R. 32(C), after the trial court has denied (rather than refused to rule upon) a motion to correct such an entry. If a direct appeal from the underlying sentencing entry has previously been taken in and decided by the court of appeals, the sentencing entry is implicitly a final order through application of the law of the case doctrine. A subsequent order from the trial court denying the defendant's motion to correct the sentencing entry is itself a final appealable order, rather than interlocutory, and may be addressed by this court on appeal. If, to the contrary, no direct appeal was taken from the noncompliant sentencing entry, that entry remains a non-final order and no direct appeal may be taken from the subsequent order from the court denying a motion to correct the sentencing entry. At that point, as in [*State v.*] *Bonner,* [10th Dist. No. 14AP-461, 2015-Ohio-1010], the defendant's remedy (once the trial court has denied his motion to correct the sentencing entry) lies in a writ of procedendo ordering the trial court to grant him the correct sentencing entry to which he is entitled.

> In contrast, if the defendant has pursued a legal remedy through a motion before the trial court, and the court has simply declined to rule on the motion, the defendant's remedy is through a writ of procedendo, and the appealability of the underlying sentencing entry is not determinative. If the defendant has yet to bring a motion before the trial court to correct the underlying sentencing entry, neither an appeal nor a writ is ripe. *Dunn* [*v. Smith*, 119 Ohio St.3d 364, 2008-Ohio-4565].

followed our precedent set forth in *State v. I'Juju*, 10th Dist. No. 15AP-692, 2016-Ohio-3078, and *State v. Monroe*, 10th Dist. No. 13AP-598, 2015-Ohio-844.  In *I'Juju*, we stated:

> Initially, as we found in *Monroe*, the purpose of Crim.R. 32(C) is to ensure that a defendant is on notice concerning when a final judgment has been entered and the time for filing an appeal has begun to run. Like the defendant in *Monroe*, in the present case, appellant filed a direct appeal of the judgment; thus, appellant cannot credibly argue that he was not on notice regarding when a final judgment was entered. Furthermore, consistent with our reasoning in *Monroe*, by reviewing and affirming the trial court's judgment in *I'Juju*, this court implicitly found the trial court's judgment was a final appealable order, and the doctrine of law of the case would preclude both the trial court and this court from concluding it was not a final appealable order.
>
> Although we indicated in *Monroe* that an appellate court may choose to re-examine the law of the case it has itself previously created if that is the only means to avoid injustice, appellant has failed to demonstrate that any injustice would be prevented by granting his motion. Appellant filed his motion to correct judgment entry 30 years after the trial court filed the original judgment, and appellant has failed to convince us that the trial court's issuing a new entry at this very late juncture would alleviate any prejudice or prevent an injustice.

*Id.* at ¶ 10-11.

{¶ 44} As in *Bates*, *I'Juju*, and *Monroe*, appellant in the consolidated cases before us filed a direct appeal and this court took the appeal and decided the case 17 years ago. *State v. Payne*, 10th Dist. No. 02AP-723, 2003-Ohio-4891.  Therefore, pursuant to law of the case doctrine, the original and corrected original sentencing entries were final and appealable.  Furthermore, appellant in this case has failed to demonstrate that any injustice would be prevented if we were to accept his argument that the original and corrected original judgment entries were not final and appealable.  Therefore, I would decline to re-examine the law of the case that the original and corrected original sentencing entries were final and appealable.

{¶ 45} I concur in judgment only as to the first assignment of error.  For this limited reason, I would reverse and remand to the trial court to determine which, if any, of the alleged errors set forth in the motion to correct a void sentence, if established, would render

the sentence void in part or in its entirety and therefore would not be subject to res judicata or the time constraints and criteria outlined at R.C. 2953.21 through 2953.23. In the event an alleged error, if established, would *not* render the sentence void in part or in its entirety, the court should apply the principles of res judicata and the time constraints and criteria outlined in R.C. 2953.21 through 2953.23 to that particular error.

**{¶ 46}** I write separately regarding the first assignment of error to express caution regarding the broad conclusion set forth in the lead opinion at paragraphs 17-18 and suggested in footnote one of *State v. Steele*, 10th Dist. No. 18AP-187, 2018-Ohio-3950, quoted in paragraph 17 of the lead opinion. While I recognize the concern of appellate courts regarding the "swelling" of the Supreme Court of Ohio's "void-versus-voidable-sentence jurisprudence," *State v. Straley*, __ Ohio St.3d __, 2019-Ohio-5206, ¶ 26, I think it is important to note that the labeling of a motion as one "to correct or vacate a void sentence" does not necessarily require a trial court to assume the petitioner has in fact raised an issue that would render part or all of a sentence void and accordingly require the trial court to evaluate the motion under *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, and its progeny.[9] Such a motion does, however, require a trial court to carefully examine the motion, and each separate alleged error raised therein, to determine whether the alleged error, if established, would render part or all of the sentence void. Sometimes this analysis involves a fine line. But, to be clear, not every sentencing error results in a void sentence, even if a petitioner labels it as such. Furthermore, if such an error exists, it may render the sentence void only in part, leaving the remainder of the sentence unaffected.

---

[9] It is well-recognized that the caption or title of a motion is not controlling and that a court should consider the content of the motion in determining how to treat it. *Cooke v. United Dairy Farmers, Inc.*, 10th Dist. No. 05AP-1307, 2006-Ohio-4365, ¶ 29 ("Courts of this state have recognized that the name given to a pleading or motion is not controlling. Rather, it is the substance of the pleading or motion that determines the operative effect thereof."). (Internal citation omitted.) *See also Carter-Jones Lumber Co. v. JCA Rentals, LLC*, 7th Dist. No. 12 MA 56, 2013-Ohio-863, ¶ 19 ("A court is entitled to rely on the caption of a motion when ruling on it, but also has the discretion to construe the motion based on the contents in the body of the motion, itself."); *State ex rel. Browning v. Browning*, 5th Dist. No. CT2011-CA-55, 2012-Ohio-2158, ¶ 43 ("Courts of this state have recognized that the name given to a pleading or motion is not controlling. Rather, the substance of the pleading or motion determines the operative effect thereof.") (Internal citation omitted.); *State v. Workman*, 12th Dist. No. CA2002-12-302, 2003-Ohio-4242, ¶ 6 ("It is not a motion's designation or title that is controlling. Rather, a motion should be considered for what it is and its content rather than how it is designated.") (Internal citation omitted.); *Lungard v. Bertram*, 86 Ohio App. 392, 395 (1st Dist.1949) ("We are fully conscious that the name given to a pleading or motion is not controlling. It is the substance and not the caption that determines the operative effect of a pleading or motion under the Code.").

{¶ 47} Even post-*Fischer* and *State v. Williams,* 148 Ohio St.3d 403, 2016-Ohio-7658, some motions which purport to correct or vacate a void sentence are, simply, petitions for postconviction relief—subject to the time constraints and criteria outlined at R.C. 2953.21 through 2953.23 and subject to res judicata. Moreover, within the same motion, some of the issues raised could be subject to res judicata and the criteria outlined at R.C. 2953.21 through 2953.23, whereas others might not. *See Fischer* at ¶ 36-40 ("[T]he court of appeals in this case correctly found that Fischer's remaining claims, *which did not involve a[] void sentence or judgment*, were barred by res judicata. * * * [R]es judicata still applies to other aspects of the merits of a conviction, including the determination of guilt and the lawful elements of the ensuing sentence."). (Emphasis added.) Therefore, res judicata[10] may still apply to part or all of a motion captioned as a motion to vacate or correct a void sentence. Thus, the trial court must engage in careful examination of such a motion issue by issue. The trial court here did not engage in an issue-by-issue examination.

{¶ 48} I respectfully dissent from the lead opinion's analysis of the third, fourth, fifth, and sixth assignments of error, and I would find them to be rendered moot pursuant to reversal and remand on the first assignment of error. If, upon remand, the trial court determines that some or all of the issues raised in appellant's motion would, if established, render part or all of the sentence void, and thus are not subject to res judicata or the criteria outlined at R.C. 2953.21 through 2953.23, the trial court should address these issues in the first instance. I would not opine on issues not yet decided by the trial court.

{¶ 49} For these reasons, I respectfully dissent in part and concur in judgment only in part. I concur in judgment only and would sustain the first assignment of error. I would

---

[10] It is also important to remember that this court has applied the doctrines of res judicata and law of the case to previous determinations, within the same case, that an alleged error did not render a sentence void. Accordingly, I would disagree with the statement in footnote 1 of *Steele* that an alleged sentencing error, even one which claims to render a sentence void, could be "revived time and time again without being foreclosed by res judicata." That is not the case. *See State v. Haynes*, 10th Dist. No. 14AP-276, 2015-Ohio-183, ¶ 14 ("We believe that once an appellate court has ruled that a judgment is not void, that ruling binds the case for purposes of future consideration."); *State v. Anderson*, 10th Dist. No. 15AP-897, 2016-Ohio-1089, ¶ 12-13 ("Moreover, we have previously decided these issues in Anderson's previous appeal. We again find Anderson's assignments of error to be without merit and we specifically hold that his sentence is not void. Therefore, his claim is barred by res judicata."); *see also State v. Sowell*, 8th Dist. No. 107153, 2019-Ohio-701, ¶ 13 ("Sowell's arguments are barred by res judicata. This court has repeatedly found that the sentence on the [repeat violent offender] specification is not void; thus, any argument regarding sentencing should have been raised on direct appeal."); *State v. Burns*, 2d Dist. No. 27374, 2018-Ohio-1419, ¶ 19 ("In [the appellant's] second appeal, we found that the trial court properly imposed an aggregate sentence of 44 years to life. * * * Hence, we have already determined that the sentence is not void, implicating the doctrine of res judicata.").

reverse and remand and instruct the trial court to determine, alleged error by alleged error, set forth in the motion to correct a void sentence, which, if any, of the alleged errors, if established, would render the sentence void in part or in its entirety and therefore are not subject to res judicata or the time constraints and criteria outlined at R.C. 2953.21 through 2953.23. I concur with the majority overruling the second assignment of error. I dissent from the majority addressing the third, fourth, fifth, and sixth assignments of error and would find the same to be rendered moot.

_____